## M. M. GASSER *vs.* SUN FIRE OFFICE.

### January 10, 1890.

| 42 | 315 |
| 50 | 345 |

| 42 | 315 |
| 52 | 156 |
| 52 | 385 |
| 42 | 315 |
| 66 | 148 |

| 42 | 315 |
| 68 | 338 |

**Fire Insurance—Condition—Arbitration as to Amount of Loss Prerequisite to Suit.**—Where, in an insurance policy, the amount of the loss is made payable 60 days from the date of the adjustment of a claim, and the method of adjustment provided for in the policy in respect to the "damage to the property" is, in case the parties are unable to agree, by appraisement of arbitrators, to be selected in the manner therein provided, and the decision of a majority is made "binding and conclusive as to the amount of such loss or damage, but shall not decide the validity of the contract, or any question except the amount of such loss or damage," *held,* that such provision is valid, and a prerequisite to the right to institute a suit on the policy.

**Same—Arbitration as to Partial Loss.**— The language of the policy in question considered, and *held* to contemplate an appraisement in the manner pointed out in the policy of the loss or damage suffered by the assured from the total as well as partial destruction of personal property covered by the policy.

Appeal by defendant from an order of the district court for St. Louis county, *Ensign,* J., presiding, sustaining a demurrer to the answer.

*White, Shannon & Reynolds,* for appellant.

*White & Hewit,* for respondent.

VANDERBURGH, J.   This action is to recover upon an insurance policy for loss or damage suffered by fire.   The defendant does not deny its liability under the policy, but disputes the extent of the loss, in respect to which the parties are unable to agree.   The principal controversy in the case is over the arbitration clause in the policy. Under the policy the defendant first undertakes, generally, to indemnify the plaintiff for loss by fire within the amount specified; but we are to look to other provisions in the policy bearing on the question, in order to determine when a cause of action arises, and upon what conditions the loss becomes payable.   In this case the policy provides that "loss money will be payable at the expiration of 60 days

from the date of the adjustment of a claim, unless the society shall have replaced the property damaged or destroyed," etc. This is the only provision on the subject. This clause, then, fixes the time for payment, and the date when a right of action accrues, under the policy, if there are suitable and adequate provisions for the adjustment of the loss or damage suffered, which the defendant is in good faith ready and willing to comply with. If the defendant should refuse to make or permit an adjustment in pursuance of the policy, this provision would, of course, be inoperative. In case of loss it is required that the assured shall make and submit proper proofs of loss, and thereupon the provisions for adjustment are as follows: "(4) The amount of sound value and of damage to the property may be determined by mutual agreement between the society and the insured, or, *failing to agree*, the same shall then, at the written request of either party, be ascertained by an appraisal of each article of personal property, or by an estimate in detail of a building, by competent and impartial appraisers, one to be selected by each party, and the two so chosen shall first select an umpire to act with them in case of their disagreement; and, if the said appraisers fail to agree, they shall refer the difference to such umpire; and the award in writing of any two shall be binding and conclusive as to the amount of *such loss or damage, but shall not decide the validity of the contract, or any other question, except the amount of such loss or damage.*" The policy also contains the following provision: "(10) It is furthermore hereby expressly provided and mutually agreed that *no suit or action against the society for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery, until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within twelve months next after the loss shall occur.*"

The answer of the defendant shows that the parties differ in respect to the damage to the property covered by the policy; that they attempted to agree and determine the amount of such damage, but were unable to agree in respect to the amount to be paid therefor, and thereupon, in pursuance of the provision of the policy referred to, the defendant duly and seasonably made a written request of said

plaintiff that the amount of such damage be ascertained by an appraisal, according to the terms of the contract, and demanded that the plaintiff select and name an appraiser to act for him; and that the plaintiff has wholly neglected and refused to comply with such request, or to enter upon any appraisal. The defendant therefore claims that no right of action has yet accrued to the plaintiff under the policy. The contention of the plaintiff is that the arbitration clause is not an essential condition to his right to bring an action for the damages suffered; that it is a mere collateral executory agreement, revocable by either party, and was, in fact, revoked by the commencement of the action; and that it is invalid, as an attempt to oust the courts of their jurisdiction; also, that in any event the arbitration clause, by its terms, cannot apply to cases where personal property covered by the policy is wholly destroyed.

1. An agreement that a right of action should not be enforced through the ordinary tribunals cannot be sustained; and therefore a general covenant in a policy that claims for damages should be settled by arbitration would not be a bar to a suit for damages. That would be to oust the courts of their jurisdiction. So a provision in a contract to refer any specific matter of difference which might arise under it is no defence, if it is merely collateral to the principal obligation. These cases are entirely distinct from covenants providing for the adjustment of certain differences, or the estimate and determination of amounts or values, as preliminary to the right of recovery. In such case the parties, by the same agreement which creates the liability and gives the right, qualify the right by providing that before a right of action shall accrue certain facts shall be determined, or amounts and values ascertained; and this is made a condition precedent, either in terms or by necessary implication. *Del. & Hudson Canal Co.* v. *Pa. Coal Co.*, 50 N. Y. 250, 266, and cases; Leake, Cont. 954, 955; May, Ins. §§ 493, 494. Parties may by contract fix the time when a claim growing out of the same shall be due and payable, and may provide therein that certain things shall be done before the same shall become due. Mr. Leake states the result of the English cases as follows: "A reference to arbitration of

differences arising upon a contract * * * may be agreed upon in the contract as a condition precedent to the existence of any claim or liability." Page 953. And parties may agree that no right of action should arise between them until it had been determined by reference to arbitrators to be chosen, and, if such agreement is made, then no right of action exists until the decision is made. And in *Scott* v. *Avery*, 5 H. L. Cas. 811, 849, the lord chancellor, in construing the policy of insurance in that case, which contained an arbitration clause, was of the opinion "that the meaning of the parties was that the sum to be recovered should be only such a sum as, if not agreed upon in the first instance between the committee and the suffering member, should be decided by arbitration; and that the sum so ascertained by arbitration, and no other, should be the sum to be recovered, appears to me to be clear beyond all possibility of controversy. And, if that was their meaning, the circumstance that they have not stated that meaning in the clearest terms or in the most artistic form is a matter utterly unimportant. What the court below had to do was to ascertain what was the meaning of the parties, as deduced from the language they have used." And he thought that in that case "the right of action should be, not for what a jury should say was the amount of the loss, but for what the persons designated in that particular form of agreement should so say." The case of *Wolff* v. *Liverpool, etc., Ins. Co.*, 50 N. J. Law, 453, (14 Atl. Rep. 561,) is not essentially different from the case at bar. The policy in that case contained like provisions in reference to arbitration, except that it was provided that the loss should not be payable until such appraisal, which was held a condition precedent to the right to bring an action. But in this case the several provisions of the policy must be considered together, and it is apparent that it must be given a similar construction; for it is expressly provided, not merely that no suit should be sustainable until after the award should have been obtained as therein provided, but the time of payment of the loss money is, as we have seen, fixed at 60 days from the date of the adjustment of a claim. It could not, therefore, be sooner demanded, unless the adjustment provided for was waived, refused, or prevented

by the company. *Expressio unius exclusio alterius.* *Del. & Hudson Canal Co.* v. *Pa. Coal Co., supra; Braunstein* v. *Accidental Death Ins. Co.*, 1 Best & S. (101 E. C. L.) 783. The provision for arbitration in this case was, then, an essential part of the contract to pay the loss, and was a condition precedent to plaintiff's right of action. It is obvious that the stipulation that no suit should be maintained until after an award fixing the amount of the claim must be construed with, and controlled by, the conditions under which the appraisement is required, so that if no differences should arise requiring an arbitration, or the same should be waived or declined by the company, this clause would, in such case, become inoperative.

2. By the terms of the arbitration clause or section above referred to, the amount of "sound value and of damage to the property" may be determined by mutual agreement; and, if the parties cannot agree, then the same shall be ascertained by appraisers, to be chosen as therein provided. This is the only provision for adjustment contained in the policy. It is clear that the same property the value of which may in the first instance be determined by agreement is to be considered by the appraisers, whether the amount of damage is that of the full value of the property or not,—that is, whether the goods are wholly or partly destroyed. The construction of this section is not qualified in the manner contended for by plaintiff by the preceding sections, which relate to the proofs, and the arrangement and care of the property partially injured. In the same stock of goods, many separate packages might be wholly destroyed, while others would be classed as "damaged" goods; but the amount of damage to the property insured would include both classes. And it would hardly be reasonable to hold that the parties intended to make provision for adjusting only a part of the loss or damage to the goods, leaving no provision for the balance, though the assured is required to return, in the inventory constituting a part of the proof of loss, the whole thereof, including property claimed to be wholly destroyed. And it is eminently proper that in such cases, involving the examination of books, and a large number of items, and the extent of the damage, it shall be determined by three men, as appraisers. It is a matter proper for reference, and the controversy may generally be more sat-

isfactorily and speedily determined in that way than in any other. *Mentz* v. *Armenia Fire Ins. Co.*, 79 Pa. St. 481; *Johnson* v. *Am. Fire Ins. Co.*, 41 Minn. 396, (43 N. W. Rep. 60.)

Order reversed.