STATE OF MINNESOTA *vs.* FRED PAMPERIN.

January 10, 1890.

**Regulation of Billiard Saloons, etc.**—Billiard saloons and pool-rooms are proper subjects of police regulation and surveillance.

**City Charter—Power to License includes Power to Regulate.**—Where the only legislative authority conferred by the charter of a city is to license such places by ordinance, the power to license is to be construed as a power to regulate through the license ordinance, and the city council may thereby impose such reasonable terms and conditions as may be necessary to make the license issued in pursuance thereof efficacious as a police regulation.

**Same—New Regulations after License Granted.**—In the absence of further authority to regulate or control such places, the council would not be authorized, as against existing licensees, at least, to impose new or additional conditions, not required or contemplated by a previous ordinance and license issued thereunder, or to provide and enforce penalties for the violation thereof.

Defendant was tried and convicted before the city justice of the city of Rochester, on a complaint for keeping open his licensed billiard and pool-room in that city between the hours of eleven o'clock in the night of May 25, 1889, and six o'clock of the following morning, contrary to an ordinance of the city which was passed May 6, 1889, and went into effect May 17, 1889. On May 10, 1889, the defendant obtained a license for his billiard and pool-room under the ordinance then in force, which required the place to "be kept in a quiet and orderly manner" and to "be closed on Sunday," but imposed no other requirement as to the times when it should be closed. Sentence having been passed, the defendant took the case by *cer-*

*tiorari* to the district court for Olmsted county, where, after a hearing before *Start, J.,* judgment was entered against defendant, from which this appeal is taken.

*Burt W. Eaton,* for appellant.

*R. H. Gove,* for the State.

VANDERBURGH, J. The charter of the city of Rochester authorizes the common council to enact and enforce all such ordinances as they may deem expedient for the good order of the city and the suppression of vice; and for these purposes it "shall have authority, by ordinances, *first,* to license and regulate the exhibition of common showmen and shows of all kinds; * * * to license the keeping of billiard tables, nine or ten pin alleys, and bowling saloons; to license and regulate groceries, taverns," etc. Sp. Laws 1867, pp. 134-5. There is no additional grant of power, except that contained in a special enumeration of the purposes for which it may be exercised; and the general language of the charter is limited to the objects so specially enumerated. The matter specially to be considered here is the extent of the authority of the council over the keeping of billiard tables. The power conferred is simply "to license," and there is no authority to regulate, except through the license, which is itself a species of regulation, and, under the charter in question, must be authorized "by ordinance, resolution, or by-laws." Billiard or pool-rooms are proper subjects of police regulation and surveillance, and an ordinance passed in pursuance of the charter provision referred to is a proper exercise of the police power. Its object is to control the business, and prevent it from being conducted in a manner injurious to the public welfare.

Upon the passage of the license ordinance the business authorized to be regulated by license becomes unlawful without it; and it is competent for the city council, by or in pursuance of the ordinance and license, to impose any reasonable conditions or terms it may deem proper, to make the license efficacious as a police regulation. These may require the licensee to keep an orderly house, or to keep the same closed on certain days, and during certain hours at night; and the council may prescribe a forfeiture in case of a violation of such conditions, or a conviction therefor.

v.42m—21

The charter provides that "the council shall have full power and authority to declare and impose penalties and punishments, and to enforce the same against any person or persons who may violate *any of the provisions of any ordinance.*" The license ordinance, it seems, in addition to the provisions requiring a license, provides that all licenses issued to applicants shall be granted upon certain conditions to be enforced by penalties. These conditions require "the place" to be kept in an orderly manner, and to be closed on Sunday. The license, in this instance, was issued under, and in pursuance of, and subject to all the provisions of, this ordinance. Pursuant to the charter, the defendants might be, fined for violating its provisions; or, if it had been so provided in the ordinance, the license might have been revoked for a violation of its conditions, after conviction, or, in the discretion of the council or some executive officer, upon a proper showing. *People* v. *Meyers,* 95 N. Y. 223. The ordinance we have referred to is the law governing the licensees while the license continues in force. *Schwuchow* v. *Chicago,* 68 Ill. 444. If the power "to regulate" had also been conferred by the charter, then new and additional police regulations in respect to the same matter might have been made and enforced. But, as we have seen, the power of the council cannot extend beyond the authority to license, and the imposition of reasonable conditions and terms in connection with the exercise of such power. *Gilham* v. *Wells,* 64 Ga. 192. No new terms and conditions, not within the purview of the ordinances, could be imposed after the issue of the license. The legislature, it is true, might exercise such authority, or even revoke or sweep away the licenses altogether, but it has given no such power to the council, but only such as may be exercised under the power to license by ordinance. Therefore, unless the terms of the ordinance and license in pursuance of it are such as to admit of it, existing licensees cannot be subjected to additional terms or conditions or police regulations. The license issued to the defendant bears date May 10, 1889. On the 17th of May following, the new ordinance in question here took effect. It is an independent ordinance, prescribing the time for closing billiard-rooms, and, for the reasons we have stated, was inoperative as to existing licenses, issued under the

license ordinance. We do not undertake to say that the license ordinance might not be so framed as to make the licensees subject to such regulations also, as it might also require security by a bond, or be enforced through the power of revocation by the proper authorities, as before suggested, as well as by fines and penalties in pursuance of the terms of the charter; but beyond the authority necessarily implied in the power to license by ordinance the council could not go.

Judgment reversed.