RANDALL ET AL., RESPONDENTS, v. THE AMERICAN FIRE INSURANCE COMPANY, APPELLANT.

INSURANCE POLICY—*Arbitration*—*Right of action.*—In an action upon an insurance policy, which contains an arbitration clause providing that in the event of the parties failing to agree upon the amount of damage the same should be ascertained by appraisal, and that until proofs of loss were produced and appraisal permitted the loss should not be payable, it is not necessary, as a condition precedent to the right of the assured to sue, that he should show an appraisal or award as to the damages sustained, or that he had requested arbitration, or that failure to arbitrate was not through his default, it not appearing that after the proof of loss had been furnished that the insurer had expressed dissatisfaction with the amount thereof, or had desired or requested arbitration.

SAME—*Proof of loss*—*Admissions.*—In the case at bar the insurer rejected the proof of loss for the reason that it contained a clause referring to the loss of the building as estimated by certain parties, "selected by agreement" to make estimates, which was untrue. *Held,* that the insurer would not have been prejudiced by the retention of the paper after denouncing the objectional statement as false.

SAME — *Interest* — *Proof of loss.* — Where, by the terms of a policy, the loss is payable sixty days after proof thereof, legal interest upon the amount found due is properly allowed after the expiration of the sixty days from the delivery of the proofs.

SAME — *Contracts.* — *Public policy.* — Provisions in contracts requiring all controversies between the parties as to their rights and liabilities thereunder to be submitted to arbitration are invalid as against public policy; but where such provisions are limited only to the value or quantity of a thing which might be involved in litigation, they will not be construed as ousting the jurisdiction of the courts, but only as requiring a certain character of evidence as precedent to recovery.

*Appeal from First Judicial District, Lewis and Clarke County.*

The cause was tried before GALBRAITH, J., sitting in place of HUNT, J. Plaintiffs had judgment below.

*Bach & Buck,* and *B. P. Carpenter,* for Appellant.

Plaintiffs must recover on an award by arbitrators or appraisers, if at all. The action is based upon an award. Any evidence of value except to establish an award was duly excepted to. There is no evidence of an agreement to appoint arbitrators or appraisers, and none were appointed. No award or appraisement was made. There was no waiver by defendant of anything. Unless waiver is pleaded and proved, plaintiff can recover only on complying with the conditions of the policy. (*Welch* v. *Des Moines Ins. Co.* 32 Md. 369; *Lanitz* v. *King,* 93 Mo. 513; *Nichols* v. *Larkin,* 79 Mo. 264.) There is no evidence of an agreement to adjust the loss and damage at a specified amount, or at an amount to be fixed by Ketchum and De Noille. They were simply employed by the insured as reputable builders to make an estimate for them. The plaintiffs seek to bind defendant by a pretended agreement never made, and to palm off a builder's estimate as an award. This is an attempt at fraud that avoids the policy. "All surprise, trick, cunning, dissembling, and other unfair way that is used to cheat any one is to be considered as fraud." (Willard's Equity Jurisprudence, p. 147.) No proper proofs of loss were tendered to defendant. The so-called proofs contained a false statement which justified defendant in refusing them. If defendant had accepted the so-called proofs of loss, it would have been injured by the false statement. No qualifications or

conditions can properly be attached to proofs of loss. (*Wood v. Hitchcock*, 20 Wend. 47; *Roosevelt* v. *Bull's Head Bank*, 45 Barb. 579.) The four alleged proofs of loss were delivered in a lump, and a valid objection to one was a valid objection to all and to each. The evidence shows a failure to agree to the amount of loss or damage. The last clause of the policy is as follows: "And until such proofs as above specified are produced, and examinations and appraisals are permitted, the loss shall not be payable." The presentation of proper proofs and the examinations and appraisals are conditions precedent. The words "the loss shall not be payable" are equivalent to the words "no action shall be brought therefor." There cannot be a recovery without an award, unless defendant refuses to arbitrate or to permit an appraisal. The condition that proper proofs of loss must be furnished, and that there must be an award by arbitrators or appraisers before the loss is payable, is legal and valid. (*Scott* v. *Avery*, 5 H. L. Cas. 811; *United States* v. *Robeson*, 9 Peters, 327; *Yeomans* v. *Girard F. etc. Ins. Co.* 5 Ins. Law J. 858; *Gauch* v. *London & Lan. Ins. Co.* 10 Fed. Rep. 355; *Hall* v. *Norwalk Fire Ins. Co.* 57 Conn. 114; *Old Saucelito etc. Dry Dock Co.* v. *Commercial U. A. Co.* 66 Cal. 253; *Adams* v. *South British etc. Ins. Co.* 70 Cal. 198; *Carroll* v. *Girard F. Ins. Co.* 72 Cal. 301; *Scottish etc. Ins. Co.* v. *Clancy*, 71 Tex. 5; *Gasser* v. *Sun Fire Office*, 42 Minn. 315; *Wolff* v. *Liverpool & L. & G. Ins. Co.* 50 N. J. L. 453; May on Insurance, § 493; 2 Wood on Fire Insurance, § 457; Morse on Arbitration and Award, 93; *Hamilton* v. *Liverpool L. & G. Ins. Co.* 136 U. S. 242; *Lovejoy* v. *Hartford F. Ins. Co.* 11 Fed. Rep. 63; *O'Reilly* v. *Kerns*, 52 Pa. St. 214.) The assured must demand arbitration or appraisal. (*Old Saucelito etc. Dry Dock Co.* v. *Commercial U. A. Co.* 66 Cal. 253; *Flaherty* v. *Germania Ins. Co.* 7 Ins. Law J. 226, Pa. 1878; *Lovejoy* v. *Hartford F. Ins. Co.* 11 Fed. Rep. 62; *United States* v. *Robeson*, 9 Peters, 327; *Adams* v. *South British etc. Ins. Co.* 70 Cal. 198; *Carroll* v. *Girard F. Ins. Co.* 72 Cal. 301.)

*Toole & Wallace*, for Respondents.

Different grounds for recovery on the same policy may be

properly set forth in a single complaint. (Bliss on Code Plead-
ing, § 119; foot, § 120; *Birdseye* v. *Smith*, 32 Barb. 217;
*Warner* v. *Callander*, 20 Ohio St. 190; 1 Moak's Van Sant-
voord's Pleading, 265.) The authorities cited in appellant's
brief are cases of tender of money upon an express condition
or qualification; there was no condition or limitation of any
kind, but a mere formal tender, containing among other things
the estimate required. Nor was there any attempt at fraud in
the submission or tender of these proofs. This sole objection
only having been interposed to the proofs at the time they were
tendered and refused, all other objections were thereby waived;
(*Tayloe* v. *Merchants' F. Ins. Co.* 9 How. 390, 403, 404; *Hart-
ford Prot. Ins. Co.* v. *Harmer*, 2 Ohio St. 452; 59 Am. Dec.
684; *Wyman* v. *People Eq. Ins. Co.* 1 Allen, 301, 304; *Ayres*
v. *Hartford F. Ins. Co.* 17 Iowa, 176, 192; 85 Am. Dec. 553;
*Carman* v. *Pultz*, 21 N. Y. 547.) That the objection where
argued to a statement of fact must be well grounded, see Berry-
man's Dig. Ins. Law, p. 1311, No. 98; *Williams* v. *Hartford
Ins. Co.* 54 Cal. 448; 35 Am. Rep. 77. The negotiations and
examinations of Luke and Buck, at Moreland, and Bozeman,
two days after the fire, might well be said to constitute a waiver
of all proofs of loss. (*O'Brien* v. *Ohio Ins. Co.* 52 Mich. 131;
*Susquehanna Mut. F. Ins. Co.* v. *Staats*, 102 Pa. St. 529.) Ap-
pellant states that the evidence shows a failure to agree to the
amount of "loss or damage," then adverts to the clause in the
policy concerning the payment of loss. The evidence not only
is silent upon the question of "loss or damage," but shows con-
clusively that the *plaintiff and the company* never reached a point
in their settlement where the question of agreement upon loss
would arise, as the company rejected the proofs of "loss or dam-
age" tendered, and all negotiations between them then ceased.
The examination and appraisal was a privilege and option to the
company that they never sought to avail themselves of, stand-
ing solely upon their objection to the proofs, and as the proofs
were sufficient, the company refusing to receive the same, itself
became in default under the contract, and could insist on noth-
ing more. Authorities are cited upon the general proposition of
the right to make arbitration upon a special subject, as "loss or
damage," a condition precedent to payment. At the time these

policies were executed we were governed by the Organic Act, and neither parties nor the legislature could by contract or enactment destroy the jurisdiction in courts by that act vested. (*Custer Co.* v. *Yellowstone Co.* 6 Mont. 39, 48–50.) But conceding that this might be done, the question is of no importance in this case under the conditions of this policy, for the clause concerning arbitrators (the last clause of the conditions of the policy) only provides for a submission upon "the written request of *either* party," in the event of differences "*after* proofs of loss" touching the question of "loss or damage." (*Gere* v. *Council Bluffs Ins. Co.* 67 Iowa, 273, 274.) Here there was no written request on the part of the company for submission to arbitration, no suggestion of the company before their answer filed in this suit of any controversy as to the loss, but a mere denial of any liability under the policy, and the contention that proper proofs never had been submitted; hence this provision, even if there had been a written request by the company in accordance with its terms, does not and could not apply. (*Lasher* v. *Northwestern Nat. Ins. Co.* 18 Hun, 98, 100; *Allegre* v. *Maryland Ins. Co.* 6 Har. & J. 408, 413; 14 Am. Dec. 289; *Western etc. Ins. Co.* v. *Putnam,* 20 Neb. 335; May on Insurance, § 493, foot.) The conditions of the policy in 66 Cal. 253, were altogether different from the conditions of the policy in the present suit. Upon the question of interest, the sixty days provided by the policy within which defendants might exercise the option of rebuilding had elapsed without their so doing; they made no complaint as to the loss or damage; and the papers presented being proper proofs of loss, the whole amount of the policy then became due and payable. They refused, on demand afterwards made, to pay the loss; and as a liquidated demand the same would bear interest. (*Allegre* v. *Maryland Ins. Co.* 6 Har. & J. 408, 413; 14 Am. Dec. 289.) But, on account of the objection assigned on the presentation of the proofs of loss, which was groundless in itself, and the unwarrantable refusal of the companies to receive the same, these "arbitration clauses" and the clauses concerning the suit, found in three of the policies, have no application whatever to the question of the present recovery in these cases. (*Goldstone* v. *Osborne,* 2 Car. & P. 550; 27 Fed. Rep. 32.)

HARWOOD, J.—The cause of action herein is founded upon an insurance policy, whereby appellant insured and agreed to indemnify respondents against loss which might happen by the destruction or damage of appellant's building, situate at Moreland, Gallatin County, Montana, known as the Moreland Hotel, and certain furniture therein contained, by fire, to the extent of $1,500, the sum of $1,125 being placed upon said building, and the sum of $375 upon the said furniture. There were also in force during the same period three other policies of concurrent insurance, issued by certain other companies in favor of plaintiffs upon the same property, each in the sum of $1,500, and distributed in like amounts on said building and furniture as aforesaid. While said insurance contracts were in force, all of said property except a small portion of the furniture was destroyed by fire. This action was brought to enforce payment of said $1,500 indemnity, and the trial resulted in a judgment for plaintiffs in said sum, with interest and costs. Whereupon defendant moved for a new trial upon a statement of the case, on the ground of insufficiency of the evidence to justify the verdict, and that the same is against law; and also errors of law occurring at the trial and excepted to by the moving party. Said motion being overruled the case is brought up by appeal from the order overruling the same, as well as appeal from the judgment.

The insurance policy involved provides, among other conditions, as follows: "The amount of loss or damage to be estimated according to the actual value of the property at the time of the loss; and to be paid within sixty days after the loss shall have been ascertained in accordance with, and within the terms and conditions of this policy, and proof of the same satisfactory to the said company shall have been made by the assured and received at the office of the company in Philadelphia. It shall be, however, optional with the company to repair, rebuild, or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, giving notice of its intention so to do within sixty days after receipt of proofs herein required; and in case the company elects to rebuild, the assured shall, if required, furnish plans and specifications of the building herein described. The assured sustaining loss by fire

under this policy shall forthwith give notice in writing of said loss to the company, and within thirty days thereafter render a particular account, by separate items and proof thereof, signed and sworn to by the assured, setting forth: (1) A copy of the written portion of this policy and all indorsements hereon. (2) Other insurance, if any, on same property, or any portion thereof, with copies of written portions of each policy and indorsements thereon. (3) The actual cash value of the property described at the time immediately preceding the fire. (4) The ownership of the property described, and the interest of assured in same. (5) For what purposes, and by whom the building herein described, or containing the property herein specified, and the several parts thereof, were used at the time of the fire. (6) The date of the loss and the amount thereof. (7) How the fire originated, as far as the assured knows or believes. The amount of sound value and of damage to the property may be determined by mutual agreement between the company and the assured; or if they fail to agree, the same shall then, at the written request of either party, be ascertained by an appraisal of each article of personal property, or by an estimate, in detail, if a building, by competent and impartial appraisers, one to be selected by each party, and the two so chosen shall first select an umpire to act with them in case of disagreement; and if the said appraisers fail to agree they shall refer their differences to such umpire; and the award of any two, in writing under oath, shall be binding and conclusive as to the amount of such loss or damage, but shall not decide the validity of the contract, or any other question except the amount of such loss or damage." It is further provided in said policy that "the company shall have the right to take any of the articles damaged at their appraised value; and until such proofs as above required are produced and examinations and appraisals are permitted the loss shall not be payable."

The plaintiffs in their complaint set up the contract of insurance, alleged the destruction of the property by fire, and "that plaintiffs' loss thereby was $6,164 on said Moreland Hotel, and $1,851.14 on said furniture and fixtures contained in said hotel." Plaintiffs further allege that they furnished defendant notice of said loss, and that "defendant by its adjusting agent made a

personal examination into the circumstances of said loss and fire, and made a request of plaintiffs that the value of said building be ascertained by arbitrators to be mutually chosen." That on the tenth day of September, 1887, plaintiffs and defendant did so refer the question of value of said building to arbitrators mutually agreed upon . . . . John Ketchum and R. W. De Noille, of Helena aforesaid, who reported and decided the value of said building at the time of said fire to be $7,179. "That on the fourteenth day of September, 1887, the plaintiffs furnished the defendant with proofs of said loss, and of their interest in said property, and otherwise fully performed all the conditions of said policy on their part; that on the fifteenth day of September, 1887, the defendant returned said proofs of loss to plaintiffs and declined to pay said loss, assigning as the single ground therefor that said proofs were not satisfactory, for the reason that they referred to the estimate made by said arbitrators; that no demand has been made by defendant for a further or any other reference of said loss on building or furniture since said proofs of loss were so furnished; nor has defendant requested any further proofs of loss; nor did the defendant within sixty days after receipt of proofs give notice of their intention to rebuild or restore any of said property."

Defendant by answer denied the value of said building to be the sum alleged by plaintiffs, or any sum exceeding $3,250; and denied the value of said furniture to be the sum alleged by plaintiffs, or any sum exceeding $900; and said answer further put in issue all the allegations of plaintiffs' complaint, except the existence of said insurance policy, the destruction of said property by fire, save a small portion of the furniture, and some other allegations not necessary to notice at this time.

In addition to the specific denials of plaintiffs' allegations, defendant alleged by way of new matter of defense that the plaintiffs left, at the office of defendant's agent, in the city of Helena, while said agent was absent therefrom, on or about September 15, 1887, "some paper which falsely stated that arbitrators had been agreed upon by plaintiffs and defendant;" that plaintiffs' attention was called to this fact by defendant's agent on the same day, and thereupon plaintiffs asked permission to retain said paper, stating that said paper should not be

regarded or treated as having been tendered to defendant, to which defendant by its agent assented. The answer further averred that plaintiffs, on or about September 14, 1887, " fraudulently and with intent to deceive and obtain an unfair advantage over defendant in the settlement of said claim, falsely represented to defendant's agent that two certain persons had been agreed upon by plaintiffs and defendant, as arbitrators, to determine and decide upon the value of said building and the cost of rebuilding the same, and that such arbitrators had determined and decided that the value of said building was at the time of the fire $7,179; whereas in truth and in fact, as plaintiffs well knew, such persons had never been agreed upon or selected as arbitrators, and as plaintiffs well knew, such persons had never determined as arbitrators or otherwise that said building was of the value of $7,179, or that it would cost said sum, or any other particular sum to rebuild the same. The answer further averred that defendant requested plaintiff to furnish it with plans and specifications of said building so destroyed by fire, but that plaintiffs neglected and refused to furnish the same; and that no proofs, plans, and specifications, declarations, or certificates have been furnished, and no examination or arbitration has been permitted or furnished by plaintiffs, or had as required by the conditions of said policy of insurance. This new matter of defense was controverted by plaintiffs' replication.

The first and main point insisted upon by appellant is, that this action is brought upon an alleged award by arbitrators, and that no evidence of value of the property destroyed, except to establish an award, was admissible. This point was raised by defendant in the lower court at the trial, and objection was made to the introduction of any evidence as to the value of the property, or the amount of said loss, except to establish an award. This objection was overruled, and the court admitted, over the objection and exception of defendant, evidence offered by plaintiffs tending to prove the allegations of the complaint as to the value of the property destroyed, and the loss sustained by plaintiffs, independent of the appraisal or award of arbitrators, as alleged in the complaint. Proof was also admitted on behalf of plaintiff in respect to the alleged submission of the question of the value of said building and plaintiffs' loss

by the destruction thereof to arbitrators, and the alleged award by them made. Appellant's objection and exception aforesaid is based upon the terms of the policy and the clause which provides that "until such proofs as above required are produced and examinations and appraisals are permitted the loss shall not be payable." Appellant's position is, that until such appraisal and award is made by arbitrators or appraisers, chosen and acting as provided by the terms of the policy, the claim of plaintiffs is not matured for action, unless plaintiffs allege and prove that they demanded such arbitration or appraisal, and the failure to arbitrate was without the fault of plaintiffs.

Appellant further contends that plaintiffs failed to prove the selection of arbitrators or appraisers, and the appraisement by them and award of the value of the property destroyed, in the manner provided by said policy. We think without doubt plaintiffs failed in this particular, for the evidence does not show a compliance with the terms of the policy as to the selection of appraisers, or a compliance with its terms by them in appraising the property and making an award of value.

For a proper understanding of the case, and the application of our conclusion herein, it is necessary to make a brief summary of the conduct of the parties from the time the loss occurred until the action was brought. The evidence shows that immediately after said property was destroyed by fire, plaintiffs notified defendant's agent thereof by telegram. Soon after this defendant's agent visited the place of the fire, inspected and listed the furniture saved, took rough measurements of the foundation of the building, and then proceeded to Bozeman, where he was joined by Flowers, one of the plaintiffs, who brought with him the manager who was in charge of said hotel at and previous to the time of said fire. There the plaintiff Flowers, with said agent, obtained from stores certain lists and prices of furniture bought to furnish said hotel. The manager of said hotel assisted in giving said agent information of the articles in said hotel at the time of the fire. The agent says in his testimony: "We had Barrett (the manager of said hotel) take the rooms, one by one, and had him designate all articles of furniture in each room, and by means of invoices which we had, put the prices of the articles. This list of articles here

was obtained from Barrett, and the prices were obtained from the invoices, and these invoices were obtained at the stores in Bozeman where the goods were bought." Said agent of defendant also testified that while Barrett was thus giving a list of the furniture in said hotel, "Flowers was occupied giving particulars of the building and the construction of it to Mr. Crook and a builder we had secured at Bozeman to make an estimate." After such inquiries, estimates, and lists were made at Bozeman, defendant's agent returned to Helena, and on the following day met said Flowers at Helena, and handed him a letter, in which said agent informed Flowers that he would "understand that the inquiries made do not in any respect supersede or waive any of the conditions or requirements of the policies; but they have the same force and call for the same full compliance as if nothing whatever had been done by us in the premises." A few days thereafter two of the assured came to the office of the said agent, and one of them delivered to the agent a paper intended as a proof of loss. Thereupon said agent called the assured's attention to some particulars in which said paper did not comply with the terms of the policy as a "proof of loss." One of the assured then asked said agent for a blank, used for the purpose of making proof of loss, which was furnished; then one of said assured commenced to fill up such blank, when said agent informed assured that it would be necessary to have a builder "make an estimate on the building"; and in reply to an inquiry by the assured as to names of some builders who would be competent to make such an estimate, said agent named three different builders, or firms of builders, as "reliable builders" for the assured to apply to, and engage some of them to make an estimate on the said hotel, among whom was the firm of Ketchum and De Noille. The evidence on the part of plaintiffs is to the effect that when said agent named said builders Mr. Lounds, one of the assured, said to the agent: "Before we go further in this matter, is it understood that estimates furnished by either of these firms will be satisfactory to you?" To which the agent replied: "Yes, certainly; we have done business with all three of them." On the part of defendant, said agent testifies to the effect that he does not think Mr. Lounds asked such a question;

that most of his conversation was with Mr. Flowers; that Mr. Flowers asked "a similar question," to which said agent replied that "the builders named were all reliable men, and had made estimates for us before on buildings." The assured then engaged Ketchum and De Noille, one of the firms of builders named by said agent, to make an estimate of said hotel building. Such estimate was made from details and specifications furnished by assured, and was designated as "an estimate of the cost of replacing the hotel building at Moreland." Said estimate was delivered to defendant's agent, and said agent not being satisfied therewith, required of said builders a more detailed estimate, which was furnished. Said builders took no account of, and made no estimate upon the furniture destroyed in said hotel. It appears by the testimony of De Noille that the estimate of said building was made principally by Ketchum, and that it was not understood by said builders that they were to act as arbitrators, and he did not understand that they acted as such. It does not appear that any "umpire" was chosen, and the record shows that said estimate was not returned "on oath." At the time said estimate was being made by said builders, the assured had prepared what they term "proofs of loss," and the same was served on said agent. It appears that one proof of loss was made for each company having a policy in force on said property, and the four were delivered to said agent in one package. Upon examining one of said papers defendant's agent found that it contained a "clause referring to the loss of the building as estimated by Ketchum and De Noille & Co., builders selected by agreement between the agent of the company and assured to make estimates." Thereupon the agent returned all of said proofs of loss to the attorney who had delivered them for the assured. The next day said agent explained to said attorney his objection to said proofs of loss, which was, that said proofs contained said clause in reference to Ketchum and De Noille having been "agreed upon." That appears to have been the only objection to said proofs asserted. Defendant's agent insisted that said clause should be stricken out, and assured refused to strike the same out.

The foregoing facts were proved without any essential conflict, and are taken principally from testimony introduced on

behalf of defendant. There is a dispute between the parties to the action as to an arrangement made between the attorney of plaintiffs who delivered said proofs of loss and defendant's agent, whereby the same were retained by said attorney, with the understanding that such proofs were to be considered as not having been delivered to defendant's agent. The evidence is conflicting upon that point, therefore it is not open for consideration now.

Counsel for appellant contends that defendant would have been prejudiced and injured by the retention of said proof of loss with such objectionable clause therein; that it was justified in returning the same to assured; that the refusal of assured to strike out said objectionable clause and return said proofs was a failure to make proof of loss as required by the policy. Appellant construes said clause as an attempt, on the part of the assured, to involve defendant in an implied admission of a material statement of fact which in truth never occurred, and which statement was false. We do not gather such impression from the evidence. The evidence introduced on the part of defendant alone shows a state of facts from which the assured could in good faith have presumed that Ketchum and De Noille were chosen by agreement to make the required estimates on said hotel building, although they were not chosen as appraisers in the manner provided by the policy, nor did they proceed to make appraisement and return award strictly in the manner provided by the policy. The proof of loss in question, as shown by the record, contained no statement to the effect that Ketchum and De Noille were chosen as arbitrators or appraisers by agreement between the company and the assured, or that they made or pretended to make an appraisement or award as required by the policy. The proof contains the following statement: "Loss on building as estimated by Ketchum, De Noille & Co., builders selected by agreement between agent of companies and assured." Under the circumstances of the selection of said builders and the making of an estimate by them, we see no evidence of fraud, trick, or deceit in the insertion of that statement in the proof of loss. Moreover, had said statement been absolutely false in fact, we do not agree with the proposition of defendant's counsel, that the

retaining of said proofs of loss would have bound defendant by an implied admission of the truth of such statement under the circumstances shown in the case. No such implied admission could arise against defendant by merely retaining such paper, after denouncing such objectionable statement as untrue, and demanding its elimination from said proof.

We return to the main question raised upon this appeal, i. e., that "plaintiffs must recover on an award by arbitrators or appraisers, if at all." The question, as to how far courts will be governed by a provision in the contract, requiring that controversies arising as to the rights and liabilities of parties thereunder be submitted to arbitration, has engaged the profound consideration of both American and English courts of last resort. The conclusion reached, and probably settled beyond further controversy, is that a provision in a contract, requiring all *differences or controversies* arising between the parties as to their rights and liabilities thereunder, to be submitted to arbitration, will not be allowed to interfere with or bar the litigation of such controversies when brought into court. To enforce such provisions would be to allow parties to barter away the jurisdiction of courts to determine the rights of parties and redress their wrongs. Therefore such provisions are disregarded as against public policy. But many of the same eminent authorities hold that a provision in a contract requiring that the *value* or *quantity* of a thing which might be involved in a controversy thereunder be ascertained and determined by arbitration, or in some other possible and reasonable manner, does not oust the jurisdiction of the courts, but only requires a certain character of evidence of a fact in controversy. Therefore a provision in a contract like the one under consideration in the case at bar, requiring that the value of the assured property, under certain conditions, shall be ascertained by appraisal, is not disregarded as against public policy, but is upheld as valid. (*Scott* v. *Avery*, 5 H. L. Cas. 811; *Hamilton* v. *Liverpool L. & G. Ins. Co.* 136 U. S. 242; *United States* v. *Robeson*, 9 Peters, 327; *Scottish Un. & Nat. Ins. Co.* v. *Clancy*, 71 Tex. 5; *Wolff* v. *Liverpool & L. & G. Ins. Co.* 50 N. J. L. 453; *Gasser* v. *Sun Fire Office*, 42 Minn. 315; *Old Saucelito etc. Co.* v. *Commercial Un. Assur. Co.* 66 Cal. 253; *Sutro Tunnel Co.* v. *Segregated Bel.*

*Min. Co.* 19 Nev. 121; *Holmes* v. *Richet,* 56 Cal. 307; 38 Am. Rep. 54.)

The policy in the case at bar requires that if the parties fail to agree upon the amount of damage "the same shall then, at the written request of either party, be ascertained by an appraisal by "competent and impartial appraisers," one to be selected by each party, and the two to select an umpire, etc. It is insisted by counsel for appellant that said clause, viewed in connection with the other provisions of the policy, and especially the clause that provides that "until such proofs as above required are produced, and examinations and appraisals are permitted, the loss shall not be payable," makes it obligatory upon the assured in this action to prove the amount of loss or damage by an appraisal obtained in the manner required by the policy, or show a fair endeavor, and failure without plaintiffs' fault, to get such an appraisal; otherwise plaintiffs' suit in court is premature and must fail. This is claimed by defendant's counsel to be an imperative requirement of the plaintiffs, whether defendant requests such appraisal or not. There is no showing that either party requested such an appraisal. The defendant by answer expressly denies that it "made a request of plaintiffs that the value of said building be ascertained by arbitrators to be mutually chosen, or to be chosen in any other manner." The plaintiffs alleged in their complaint: "That no demand has been made by the defendant for a further or any other reference of said loss on building or furniture or fixtures since said proofs of loss were so furnished." This allegation is not denied.

In support of their position counsel for defendant cites certain authorities, which we will now briefly review. In the case of *Old Saucelito etc. Co.* v. *Com. Un. Assur. Co. supra,* it appears, from the opinion of the court, that the complaint stated "facts showing that a difference arose as to the amount of loss;" "that plaintiff thereupon, and on request of defendant, chose" arbitrators, to whom was submitted "all differences of opinion as to the amount of said loss." The plaintiff further averred that the arbitrators so selected failed to agree on the amount of loss or damage, and failed to select a third person to act with them in case of disagreement, and also failed to make an award; and the plaintiff, after waiting a reasonable time, withdrew from

such arbitration. But the court found on the trial that no arbitrators were chosen, and no differences as to the amount of damages were submitted to arbitrators, "and that the failure to submit such differences of opinion to arbitration was in no manner the fault or result of any action suffered or taken by defendant; but on the contrary, defendant had always been willing to submit such differences." Upon that state of facts and the authorities it was held that plaintiff could not recover. It should be remembered that in this case the complaint alleged that differences arose as to the amount of the loss, and that *defendant* demanded arbitration. In the case of *Adams* v. *South British etc. Ins. Co.* 70 Cal. 198, it appears that differences arose between the company and the assured as to the amount of loss, and no demand was made by either party for an arbitration as provided in the policies. The court, referring to the case reported in 66 Cal., *supra,* held that until adjustment of the claim by mutual agreement, or by arbitration, or a fair effort was made by the assured to obtain such arbitration, no action could be maintained. In the case of *Carroll* v. *Girard Fire Ins. Co.* 72 Cal. 299, it appears that an arbitration was required by the policy to determine the amount of loss, in case of differences as to the same, and that such arbitration was had. But when the plaintiff brought suit he declared upon the policy generally, ignoring the award, and made no mention of the fact that an award had been obtained. It was held that the award was a necessary element of plaintiff's cause of action. The facts involved in these California cases distinguish them from the case at bar, but in the main appellant's position is supported by them. The case of *Lovejoy* v. *Hartford Fire Ins. Co.* 11 Fed. Rep. 63, is also cited by appellant's counsel. But that was an action by creditors of the assured to enforce payment of the loss to them. It was found that no preliminary proofs of loss had been made as required by the policies; nor was there satisfactory evidence of waiver of such proofs. So it was held by Judge Blodgett that the claims were not in such condition that the assured could maintain an action thereon, and, of course, it followed that creditors of assured could not compel payment of these claims by garnishment process. In his opinion the learned judge, after finding that the preliminary

proofs had neither been made nor waived, also mentions the provision in some of the policies before him, requiring the amount of the loss or damage to be fixed by arbitration in case of dispute, and remarks that he has no doubt that courts will enforce the provision in the future as in the past. It is plain that in this case the decision did not turn upon the question, as to whether the amount of loss had been fixed by arbitration, because no preliminary proofs had been made as required by the policies, so as to reach the question of difference as to the amount of loss.

The case of the *United States* v. *Robeson, supra,* is also cited by appellant. This case affirms the general rule, that where a contract provides that a certain fact, as of the transportation of certain additional freight over and above a certain quantity, shall be paid for at a given rate, on producing the certificate of the commanding officer, showing the quantity of such additional freight transported, such fact must be proved by the kind of evidence required by the terms of the contract, or the party seeking to recover must show that he has made all reasonable effort to obtain such proof, before he can be allowed to introduce other evidence of such fact. In such a case the contract does not contemplate that anything is to be done by the person obligated to pay, except to await the certificate of the party previously designated by both parties to ascertain and certify the quantity. The contract does not contemplate that the paying party shall do anything toward obtaining such certificate, nor is there any alternative contemplated whereby the parties may, under certain circumstances, dispense altogether with the necessity for such certificate, nor that it shall only be required in case of "differences" of opinion as to the amount in question, and then can only be brought into existence by the joint action of both parties in selecting arbitrators to ascertain the value, as in the case at bar. As remarked in the case last cited, *supra,* "the principles involved . . . . are connected with the fiscal action of the government." If the paying agent of the government disbursed money on other certificates or evidence other than such as the contract provided for, he did so at his own risk, for he was required to produce such certificates as the contract called for in accounting for his disbursements.

Appellant's counsel cite as sustaining their position upon the point under consideration, "*Flaherty* v. *Germania Ins. Co.* 7 Ins. Law J. 226, Pa. 1878." We have not been able to examine this case, as the report cited is not at hand; nor do we find such case in the Pennsylvania Reports. But the holding of the Supreme Court of Pennsylvania, as announced by Mr. Justice Sharswood in *Mentz* v. *Armenia Fire Ins. Co.* 79 Pa. St. 478; 21 Am. Rep. 80, appears to be opposed to appellant's position. In that case it appears that the policy in question contained a provision for arbitration of differences as to the amount of loss, and that no action should be maintained on the policy unless the amount of loss "shall be first thus ascertained." "The defendants moved for nonsuit, 'because section 8 requires the parties to the policy to submit to a reference, etc.' Plaintiff objected to the motion because no reference was offered or asked for. By direction of the court judgment of nonsuit was entered. This was assigned for error on the removal of the record to the Supreme Court by plaintiff by writ of error." The judgment was reversed.

In the case of *Hamilton* v. *Liverpool & L. & G. Ins. Co. supra,* it appears there was contention as to "whether defendant had duly requested and plaintiff had unreasonably refused to submit to such an appraisal and award as the policy called for." But it is remarked by Mr. Justice Gray, in delivering the opinion of the court, that the evidence upon that question does not depend in any degree "on oral testimony or extrinsic facts, but wholly upon the construction of the correspondence in writing between the parties. . . . . That correspondence clearly shows that the defendant repeatedly and explicitly, in writing, requested that the amount of the loss or damage should be submitted to appraisers in accordance with the terms of the policy; and that plaintiff as often peremptorily refused to do this unless defendant would consent in advance to define the legal powers and duties of the appraisers (which defendant was under no legal obligation to do)." It was held that "the court rightly instructed the jury that the defendant had requested in writing, and the plaintiff had declined, the appraisal provided for in the policy, and that plaintiff therefore could not maintain this action." So in the case of *Gasser* v. *Sun Fire Office, supra,* dif-

ferences arose as to the amount of loss, and "the defendant duly and seasonably made a written request of said plaintiff that the amount of such damage be ascertained by an appraisal, according to the terms of the contract, and demanded that the plaintiff select and name an appraiser to act for him; and that plaintiff wholly neglected and refused to comply with such request, or to enter upon any appraisal." Under such a state of facts it was held that plaintiff must comply with defendant's request for appraisement before action could be maintained for recovery of the loss.

In the recent case of *Birmingham Fire Ins. Co.* v. *Pulver,* 126 Ill. 329; 9 Am. St. Rep. 598, the usual arbitration clause was under consideration. Mr. Justice Bailey, in delivering the opinion of the court, says: "The instructions given enumerate, among the defenses of which the defendant was seeking to avail itself, the failure of the plaintiff to submit her differences with the defendant in respect to her loss or damage to arbitration in accordance with the conditions of the policy, and on that question the jury were instructed as follows: 'As to the question of arbitration, you are instructed that, under the provisions of the policy, if there was a dispute as to the amount of the loss, then either party could demand an arbitration to determine the amount of such loss, by serving a notice in writing on the opposite party; and before you can find against the plaintiff on this point, you must believe from the evidence that there was a dispute between the parties as to the amount of the loss, and that notice in writing was served on her, or some one authorized to act for her, demanding such arbitration in accordance with the provisions of the policy, and that she in person or by attorney, without sufficient cause, refused to submit to such arbitration.' It is insisted that this instruction, though holding the law substantially in accordance with the defendant's theory, is erroneous in not conforming in its hypothesis to the evidence as it was actually given, the evidence being, as is claimed, in accordance with the hypothesis of an instruction asked by the defendant." The court held that said instruction was not erroneous. In the case of *Gere* v. *Council Bluffs Ins. Co.* 67 Iowa, 272, after suit was brought to recover the loss, the insurance company demanded arbitration, under a clause in the

policy providing therefor, and urged said clause and demand for arbitration as a defense.    The suit was commenced five months after the loss occurred.    It was held that demand for arbitration came too late, and plaintiff was allowed to proceed.

In a comparatively recent case before the Supreme Court of Michigan (*Nurney* v. *Firemen's Fund Ins. Co.* 63 Mich. 633; 6 Am. St. Rep. 388), it appears that differences had arisen between the parties as to the amount of loss.    The policy in question contained an arbitration clause very much like the one in the case at bar; and although such differences had existed, as to the amount of loss, for some five months prior to the suit, no request for arbitration had been made by either party.    At the trial the defendant invoked the clause in the policy requiring arbitration, as well as another clause providing that no suit should be brought until after such arbitration was had.    The trial court instructed the jury "that the plaintiff could not maintain his suit until the amount of his loss had first been determined by arbitration, or he had given notice to the defendant of his desire to have the same so determined, and the defendant had neglected or refused to comply with the request; and thereupon further instructed the jury to return their verdict for the defendant."    On appeal this was held to be error and the judgment was reversed.    (See other cases upon this subject: *Gibbs* v. *Continental Ins. Co.* 13 Hun, 611; *Mark* v. *National Fire Ins. Co.* 24 Hun, 565, and affirmed in N. Y. Ct. of Appeals, 91 N. Y. 663; *Hurst* v. *Litchfield*, 39 N. Y. 377; *Wallace* v. *German-American Ins. Co.* 1 McCrary, 335; S. C. 4 McCrary, 123; *Stephenson* v. *Piscataqua F. & M. Ins. Co.* 54 Me. 69; *Wolff* v. *Liverpool & L. & G. Ins. Co. supra; Western etc. Ins. Co.* v. *Putnam*, 20 Neb. 331; *Phœnix Ins. Co.* v. *Badger*, 53 Wis. 283; *Reed* v. *Washington etc. Ins. Co.* 138 Mass. 572; *German-American Ins. Co.* v. *Steiger*, 109 Ill. 254; *Lasher* v. *Northwestern Nat. Ins. Co.* 55 How. Pr. 318; *Crossley* v. *Connecticut Fire Ins. Co.* 27 Fed. Rep. 30; *Robinson* v. *Georges Ins. Co.* 17 Me. 131; 35 Am. Dec. 239.

Without further reviewing authorities, we conclude from the number examined bearing upon this important subject that the tendency now is, to construe the provision found in contracts like the one before us, providing for arbitration as to differences

respecting the amount of loss or damage, to mean, in contemplation of the parties, that the party desiring arbitration shall request the same. In view of the numerous terms and conditions of the contract and the position occupied by the parties, we believe this is the manifest intention. Under the terms of the policy, when a loss occurs the time for payment is fixed. Notice and verified proofs of loss are required to be presented by the assured, with other conditions as to proofs and examinations, if the insurer request them. The proofs of loss certify under oath the amount of loss as claimed by the assured. The insurer may accept this estimate, or proceed to negotiate for an adjustment or a "mutual agreement" with the assured, as to the amount he will take in satisfaction of the contract, or the insurer may give notice within the required time of intention to restore the property. All these alternatives for the insurer are provided in the policy, and it is contemplated that the assured must await the movements of the insurer upon some of these lines of action. The assured cannot know which will be adopted until notified by the insurer. The insurer may, also, if a difference of opinion as to the fair amount of the loss is entertained, notify the assured thereof, and request arbitration. The insurer has the amount of loss claimed by assured stated under oath, and the suggestion of "differences" in that respect must come from the insurer, and such differences ought to be certain, and would probably involve the admission of liability to pay a stated amount (*Lasher* v. *Northwestern Nat. Ins. Co.* 55 How. Pr. 318), so that an issue would be stated to submit to arbitration. The insurer, under such a contract, is the only party who can effectually demand and bring about arbitration, or gain a defense by reason of the other party's default in failing to comply therewith. But if the assured fails to request arbitration, this deprives the insurer of no right whatever. If the insurer is deprived of the right of arbitration, it happens by his own laches. Nor by demanding arbitration can the assured bring that remedy into action, for the insurer may simply ignore such demand, and lose no defense thereby when the cause of action is taken into court. Therefore, under the peculiar conditions of the contract, it depends on the will of the insurer alone as to whether he will have arbitration or

not. If he demands it in season, according to the conditions of the policy, and the conditions are shown to exist which the policy provides shall be submitted to arbitration, then the assured must accede to the request, for the courts will afford him no remedy until he submits to arbitration. (*Hamilton* v. *Liverpool & L. & G. Ins. Co. supra.*) But on the other hand, if the insurer is unwilling to arbitrate, he may ignore the request made by assured therefor; and under such conditions, to require the assured to make the request and plead and prove the fact is to require a vain and useless act, and the ceremony of proving it, which is always against the policy of the law.

An important circumstance in the case at bar is, that so far as the record shows, defendant did not at any time signify to plaintiffs a difference of opinion as to the value of said destroyed property, or the amount of damage, as claimed by plaintiffs; or that its neglect to pay said claim was on the ground of a difference of opinion from that expressed in the plaintiffs' proof of loss *as to the* value of said property. As appears by the record, that point was entirely lost sight of by defendant, in its contention that said clause in the proof of loss referring to Ketchum and De Noille as agreed upon to estimate the value of said building should be stricken out. Upon a careful review of the record it is found that the only expressions by defendant of dissatisfaction as to the stated value of said property was a remark by defendant's agent to one of the assured, "that the figures seemed rather high," referring to the estimate by Ketchum and De Noille. That was before proofs of loss were made and delivered, and the evidence is produced by plaintiffs. The defendant produced no evidence of having signified to plaintiffs a difference of opinion, as to the value of the property destroyed, from that expressed in plaintiffs' proof of loss. We therefore hold that plaintiffs were not bound to show an appraisal or an award as to the amount of damages sustained; nor were plaintiffs bound to show that they had requested arbitration, and that failure to arbitrate was not through their default.

It is contended by counsel for the appellant that the court erred in instructing the jury to the effect that if the jury found that plaintiffs were entitled to recover any sum, they were also entitled to interest thereon at the rate of ten per cent per annum

from and after the expiration of sixty days after proof of the loss was delivered. By the terms of the policy the loss was payable sixty days after proof thereof. At that time the amount of loss became due. We think interest was legally allowable under our statute, as well as the authorities in such cases. (Comp. Stats. fifth div. § 1237; *Albion Lead Works* v. *Citizens' Ins. Co.* 3 Fed. Rep. 197; *Hastings* v. *Westchester Fire Ins. Co.* 73 N. Y. 141; *Field* v. *Insurance Co. of North America,* 6 Biss. 121; *Knickerbocker Ins. Co.* v. *Gould,* 80 Ill. 388; *Home Ins. etc. Co.* v. *Myer,* 93 Ill. 271.)

The further assignments of error by appellant's counsel have been carefully considered, but none of them are sustained. These assignments of error not specifically treated appear to be based upon the theory of defense set up by defendant, which we have not sustained.

It is ordered that the judgment of the trial court be affirmed, with costs.

BLAKE, C. J., and DE WITT, J., concur.

