## KENNETH UKKONEN v. JOHN GUSTAFSON AND OTHERS.

244 N. W. 2d 139.

July 2, 1976—No. 45975.

*Jack M. Winick* and *Lynn S. Castner*, for appellant.

*Walter J. Duffy, Jr.*, City Attorney, and *Robert J. Alfton*, Assistant City Attorney, for respondents.

Heard before Todd, MacLaughlin, Yetka, and Breunig, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

In this case appellant sought a writ of mandamus to require the City Council of Minneapolis to renew appellant's parking lot license. This appeal followed the trial court's denial of the writ and denial of appellant's motion for rehearing. We affirm.

Appellant, Kenneth L. Ukkonen, operates an open-air parking lot on vacant land which he leases on a month-to-month basis. The land is located at 300-330 Second Avenue South, Min-

neapolis, and is owned by the Minneapolis Housing and Redevelopment Authority. Appellant received notice to appear on August 7, 1974, before the Standing Committee on Consumer Services of the Minneapolis City Council (committee) to show cause why his parking lot license should not be revoked because of poor management—specifically, his failure to prevent the theft of automobiles from his lot.[1] At the meeting, appellant informed the committee that he was aware of the problem and that as a temporary solution he had hired off-duty police officers to protect the lot. As a long-range solution appellant stated that he was going to install security gates at each entrance, that he had already purchased these gates, and that they would be in operation in about 30 to 60 days. There was a motion to revoke appellant's license. The committee voted against that motion but adopted a motion to "LAY THE CALL-IN OVER UNTIL RENEWAL OF [appellant's] LICENSE IN SEPTEMBER." Members of the committee informed appellant that in September it expected to receive a complete plan for preventing the stealing of cars from his lot.

On September 25, 1974, appellant appeared before the commit-

---

[1] While the record is not entirely clear as to the specific notice given to appellant, the minutes of the committee meeting dated August 7, 1974, read, in part, as follows: "Wm. Reiman, Deputy License Inspector, advised the Committee that attached to their copy of the notice to appear is a communication explaining the problem. (A letter from Alderman Earl Netwal relating to complaint received by him about the number of cars which have been stolen from the parking lot located at 4th St & 2nd Av S and owned by Kenneth Ukkonen.) Mr. Reiman said that Mr. Ukkonen, upon receipt of this notice came to his office and had a [conversation] with him. It is Mr. Reiman's understanding that the problem has been unsatisfactory management of the parking lot, and a great number of car thefts.

"Mr. Reiman stated further that Mr. Ukkonen has informed him that he was aware of this situation. He had in fact been down to see the previous Police License Inspector, Harvey Everson, about this problem. He was advised by Mr. Everson to hire off-duty policemen to try to prevent the thefts."

tee pursuant to his application for renewal of his license which had expired on September 1, 1974. The minutes of the meeting reflect that appellant advised the committee that a police officer had been employed for a period of one week but was no longer employed. There was no indication that any progress had been made in actual installation of the parking gates, but appellant stated that he had purchased the equipment and was ready to make installation the following week. Appellant requested that he be allowed to operate under a permit whereby customers would park and lock their cars until installation of the gates was completed. The committee recommended denial of the license renewal, but on September 27, 1974, the city council referred the recommendation back to the committee for reconsideration.

On October 9, 1974, appellant again appeared before the committee, this time represented by an attorney. The attorney informed the committee that since September 27, 1974, appellant had been operating the lot under a park and lock system but that he felt appellant was "harming himself" because by doing so he was losing one-third of the parking spaces in the lot. The committee was informed that appellant had "partially dug a [hole]" for the gates but that the gates had not been installed and the actual equipment was still "on order." The director of the Department of License and Consumer Services recommended, in view of the failure to complete the installation of gates, that appellant's application be denied until the work was completed. The committee agreed, and on October 11, 1974, the city council adopted the committee's recommendation to deny the renewal of the appellant's license on the grounds that "the applicant has failed to provide adequate security and management of the licensed premises." The council's action was subsequently upheld by the district court.

■ Appellant argues that failure "to provide adequate security" for the parking lot is a constitutionally insufficient cause to deny the renewal of his license since that ground for denial is not specifically set forth in the parking lot ordinance.

The ordinance in effect at the time of appellant's first appearance before the committee, Minneapolis Code of Ordinances, § 363.160, provided:

"Licenses issued under this Chapter may be revoked by the City Council or by the Mayor for cause after notice. Violation of any of the terms of this Chapter shall be cause for revocation."[2]

Appellant interprets this provision as prohibiting the city from taking action to revoke or deny a license for any reason other than violation of the terms of the parking lot ordinance. To support this interpretation appellant relies on State v. Pamperin, 42 Minn. 320, 322, 44 N. W. 251, 252 (1890), in which this court held that the Rochester City Council could not validly impose a new closing time on a billiard room because—

"* * * [n]o new terms and conditions, not within the purview of the ordinances, could be imposed after the issue of the license."

Appellant's reliance on Pamperin is misplaced since the court based its holding on the limited authority conferred on the council by the city's charter. We indicated that (42 Minn. 322, 44 N. W. 252)—

"* * * [i]f the power 'to regulate' had also been conferred by the charter, then new and additional police regulations in respect to the same matter might have been made and enforced."

The Minneapolis City Charter confers on the council a power to regulate. In discussing the powers of the Minneapolis City Council in State v. Morrow, 175 Minn. 386, 387, 221 N. W. 423 (1928) we concluded:

"* * * Such a general welfare clause as that found in the charter of Minneapolis is intended to make the powers of the council sufficiently expansive to enable them to meet and provide for new conditions as they arise."

[2] Minneapolis Code of Ordinances, § 390.130, which is the ordinance now in effect, is substantially the same.

Significantly, in Morrow we proceeded to state (175 Minn. 388, 221 N. W. 423):

"Much can be said in support of the argument which criticizes the ordinance because it fails to prescribe any standard to govern the council in granting or refusing licenses. It is silent as to both the grounds upon which parking places are subjected to regulation and the purpose of it. But here again the point has been settled adversely to defendant. The propriety of vesting such a discretion as that now involved in a 'board appointed for that purpose' was sustained in Fischer v. City of St. Louis, 194 U. S. 361, 372, 24 S. Ct. 673, 48 L. ed. 1018. In State v. Dirnberger, 152 Minn. 44, 47, 187 N. W. 972, it was considered that the decision in Fischer v. City of St. Louis settled the proposition that *there is nothing unconstitutional in vesting such a broad 'dispensing power' in a city council.*" (Emphasis supplied.)

Therefore, "cause" for denying appellant's application for license renewal is not limited to specific ordinance violations. This does not, of course, mean that the city council is free to deny the license for any reason it deems appropriate. In City of St. Paul v. Dalsin, 245 Minn. 325, 330, 71 N. W. 2d 855, 858 (1955), we observed:

"Although a municipality may by license regulate an occupation which is affected with the public interest, the licensing requirements must be reasonable in their terms and conditions so as not to go beyond the demands of the occasion whereby unnecessary, unreasonable, or oppressive restrictions are imposed in contravention of the state and federal constitutions."

In our judgment the requirement that appellant provide adequate security for cars parked in his lot is not an "unnecessary, unreasonable, or oppressive restriction." Therefore, we hold that the city council had a constitutionally valid cause for denying the renewal of appellant's license.[3]

---

[3] Appellant also alleges that the city violated the equal protection clause of the Fourteenth Amendment by requiring him to provide

■ Appellant claims that he was denied due process of law because the city failed to comply with Minneapolis Code of Ordinances, § 390.140, which requires that licensees be given written notice of alleged violations. This argument is without merit because § 390.140 did not become effective until September 1, 1974, and appellant first appeared before the committee on August 7, 1974, prior to the effective date of the ordinance. Appellant argues, nevertheless, that due process required notice to appellant of the alleged violations.

Based upon the August 7, 1974, minutes of the committee,[4] we conclude that appellant was adequately informed of the nature of the alleged violations. Further, as the trial court found and the record substantiates, appellant had been aware of this problem for some time prior to the August 7 hearing and knew that city officials considered it to be a serious situation. Finally, there were hearings before the committee on August 7, September 25, and October 9, 1974, and appellant surely was fully aware of the alleged violations at the time of the last two hearings.

■ The committee also found that evidence had been received showing that appellant "had a substantial history of non-compliance with City ordinances relating to properties under his control." Appellant claims that this finding is unsupported by the record and irrelevant to the issue before the committee. This finding does appear to be unsupported by competent evidence in the record submitted to us. However, because we have determined that the city council acted properly under the circumstances, this unsubstantiated finding has had no effect on our decision. We are persuaded that the evidence fully supports the determination of the city council that appellant was not ade-

security for the cars in his lot when the city did not take similar action against any other parking lot operator. However, appellant presents absolutely no evidence in the record to support his charge of discriminatory enforcement.

[4] Footnote 1, *supra.*

quately correcting the deficiencies in the operation of his lot, and that the denial of the license was justified.

Affirmed.