State of Iowa ex rel. Auditor v. Iowa Mutual Aid Association.

REVERSED.

---

STATE OF IOWA EX REL. AUDITOR v. IOWA MUTUAL AID ASSOCIATION.

1. **Life Insurance**: MUTUAL AID ASSOCIATION: HOW FAR SUBJECT TO STATUTORY CONTROL. A mutual aid association, organized under section 1160 of Code, for the insurance of its own members from loss by death, sickness or accident (and the defendant is held to be such an association), need not comply with the provisions and requirements of chapter 5, title 9, of the Code, relating to life insurance companines properly so called. In order to give force and effect to section 1160, the word " every " in section 1161 must be limited to the stock and mutual companies referred to in the sections which follow.

2. ———: ———: LIABILITY FOR ANNUAL REPORT. The defendant association was not organized until April, 1881, and was not required to make an annual statement until January 1, 1882; *held* that an action begun in August, 1881, to wind up the business of the defendant, could not be sustained, on the ground that it had failed to comply with the law in regard to making an annual report.

*Appeal from Wapello District Court.*

FRIDAY, JUNE 16.

ON the 17th day of August, 1881, the plaintiff *ex rel.* W. V. Lucas, auditor of State, filed a petition in the Wapello Circuit Court in substance alleging: That the Iowa Mutual Aid Association claims to be a corporation organized and existing for the purpose of affording financial aid and benefit to the families of deceased members, and assistance to members personally, in case of sickness or disability, with its principal place of business at the city of Ottumwa, Wapello county,

Iowa; that on the 4th day of April, 1881, W. B. Bonifield, George W. Tool, J. E. Fence, George Haw, J. Willamson and Messrs. Moore & Hammond, signed and acknowledged before a notary public of said county a certain certificate, which said persons called "Articles of Incorporation of the Iowa Mutual Aid Association of Ottumwa, Iowa;" that said certificate so signed and acknowledged was filed with the recorder of Wapello county, Iowa, April 7, 1881, and recorded, but has not been elsewhere filed with any officer of the State of Iowa; that said association adopted by-laws; that the defendant is an association composed of the persons aforesaid as officers, and E. H. Stiles, Frank Durgan, A. P. Peterson, W. E. Chambers, R. A. Wilson, M. DeCaskey, S. M. Robinson and Christopher How as directors, and exists only under section 1091 of the Code of 1873, which provides only for the organization of incorporations other than for pecuniary profit, and only for the purpose set forth in said section; that the defendant has at no time had any capital stock subscribed, in the sum of $100,000, or any other sum; nor has it at any time had $25,000, or any other sum of stock paid up; or any sum in any way invested in stock, bonds or mortgages of any kind; that it has deposited with the Auditor of the State no securities at any time; that before issuing policies the said defendant did not have, and has not now, and at no time has had, applications on two hundred and fifty lives for an average of one thousand dollars each, but wholly disregarding section 1163 of the Code of 1873, immediately upon filing said certificate with said recorder, commenced to issue policies or certificates of membership, without any observance of section 1163 of the Code; that defendant is now, and at all times since its organization has been, acting entirely independent of any of the laws, regulations and provisions of chapter 5, title 9 of the Code of 1873; that said company, its officers and servants refuse to recognize the Auditor of the State as having any control or supervision over it, or any of its business or interests; that said company and its officers fail and

refuse to make any reports to said auditor of its business and management; that neither it nor any of its officers or agents has any certificate of any kind from the Auditor of State, and that in each and every particular it has failed and refused to comply with any of the provisions of said chapter 5, title 9 of the Code. That some of the officers of defendant receive large salaries for their time and services; that the defendant has issued a large number of polices of insurance, by it called certificates of membership, on the lives of the people of the State; that said contracts of life insurance were not given by said persons organizing defendant, only, but by said persons together with a large number of other persons in no way associated together by business or other ties, and entire strangers to said association, who, since said organization, have been induced to enter into said contracts; and defendant threatens to continue to issue said certificates to all persons of the State, both male and female, the only conditions being that applicant pass an examination as to soundness of health, of mind and body, and pay the required fees and dues; that defendant insists upon the right to so continue business, and will do so unless restrained; that the auditor of State examined into the condition of defendant, and, finding it unsatisfactory by reason of absence of funds, securities, etc., he requested defendant to comply with the insurance laws of Iowa, as set forth in said chapter 5, title 9 of the Code, and that defendant fails and refuses to comply with said request.

The plaintiff prays for an injunction restraining the defendant from doing an insurance business, and that the affairs and business of the defendant be wound up. The petition sets out the articles of incorporation of the defendant, its by-laws, application for membership and certificate of membership. From the articles of incorporation it appears that the defendant is organized under the provisions of title 9, chapter 2 of the Code. Article four says: The object of this association is one of charity, benevolence and mutual aid among its members, and is intended to render assistance to its members, their

families and their friends, by the collection and disbursement of fees and assessments, less the cost of maintaining the assocication. Article two, section 1, of the by-laws says: The business and objects of this association shall be to afford financial aid and benefit to the families and beneficiaries of deceased members, and assistance to the members personally in case of sickness or disability. Article four, provides for the election of a board of directors and the appointment of a general agent. Article six provides: The expense of procuring business must be met from the admission fees and annual dues. Any portion of such fees and dues not used in procuring business may be placed to the credit of the surplus fund. Article seven provides that applications for membership shall be upon·printed blanks, accompanied by a fee of $10, for certificate of membership, and $5 additional as annual dues. It also provides for a local medical examination for which a fee of one dollar is to be paid by the associatian out of the admission fee, if the application is accepted; but if the application is rejected at the home office, the applicant is to pay for the local medical examination. Article eight provides that the members may be divided into two or more divisions, limited to $2,000 benefit in case of death, and $6 weekly benefits in case of total disability from sickness or accident, for a term not exceding twelve weeks in any one year. It also provides that each division shall be divded into five classes, according to age. Article nine provides that upon proof of the death of a member the directors shall pay to his heirs or legal representatives the net result of an assessment, not to exceed $2,000 in any one division.

Article ten provides that upon receipt of proofs of death of a member, each member of the division to which the deceased member belonged shall be assessed and shall pay to the secretary of the association a sum according to the class of which he is a member at the time, as follows:

Members of the first class $ .75; of the second class $1.00; of the third class $1.50; of the fourth class $2.00, of the fifth

class $3.00. Article eleven provides for the payment of weekly benefits to members, for a term not exceeding twelve weeks in one year, upon proper certificate of their total disability from sickness or accident.

Article twelve provides that when necessary the directors shall cause an assessment to be made to provide for the payment of weekly benefits in the same manner and sums as for death benefits.

Article fifteen provides as follows: "A permanent fund may be raised in the following manner: *First*, from admission fees and annual dues. *Second*, from that portion of assessments not used for the payment of benefits, which sum shall be securely invested by the board of directors, and shall be for the following purposes: To pay benefits without an assessment, in which case the secretary shall notify all members; for printing, and all the necessary expense of management." Article nineteen provides that upon proof of the death of a member, notice shall be mailed to each member of the assessment due, and a failure of a member to pay within thirty days after such notice, forfeits his policy.

The application for membership is substantially the same as is used by stock life insurance companies. The certificate of membership is similar to an ordinary life insurance policy.

The defendant demurred to the petition upon the following grounds:

1. Because the allegations of the petition show that defendant was duly and legally incorporated under and by virtue of the provisions of the Code of 1873, particularly under section 1091, and other sections in regard to corporations other than pecuniary profit.

2. Because the allegations of the petition show that defendant is a mutual aid association, duly organized under the laws of Iowa, and that the so-called contracts of insurance in the plaintiff's petition mentioned, are the mutual obligations of the members of the association for the mutual benefit of such member.

3. Because the allegations of the petition show that defendant is not such an insurance company as is contemplated by sections 1161, 1162 and 1163 of the Code of 1873, and that the provisions of chapter 5, of title 9, of the Code of 1873, do not apply to defendant." The court sustained this demurrer. The plaintiff appeals.

*Smith McPherson, Attorney-general,* for the appellant.

*Moore & Hammond* and *Wright, Cummins & Wright,* for the appellee.

DAY, J.—I. The defendant claims to be incorporated under the provisions of title 9, chapter 2 of the Code of 1873, sections 1091 to 1102 respecting corporations other than for pecuniary profit. Corporations for pecuniary profit must cause their articles of incorporation to be recorded in the office of the recorder of deeds of the county where the principal place of business is to be, and within three months thereafter must cause their articles to be recorded in the office of the Secretary of State, and must publish for four weeks in some newspaper convenient to the principal place of business, a notice stating the name of the corporation, the nature of the business to be transacted, the amount of capital stock authorized, etc. Code, § § 1060, 1062 and 1064.

Corporations other than for pecuniary profit are required to record their articles of incorporation only in the office of the recorder of deeds of the county where the principal place of business is kept, and a newspaper publication is not requisite. Code, § 1092.

The petition alleged that a certificate signed by the incorporators was filed with the recorder of Wapello county, Iowa, and recorded, but that the same has at no time been elsewhere filed with any officer of the State. Still, we do not understand that this action is brought to test the corporate capacity of the defendant. Chapter 6, title 20 of the Code, provides the manner in which actions shall be brought to

test corporate rights.　See, also, section 1074.　This action is brought upon relation of the auditor, not to test the corporate capacity of the defendant, but to close its business for an alleged failure to comply with the provisions of chapter 5, title 9 of the Code.　For the purposes of this case it must be assumed that the defendant is legally organized as a corporation.　We do not deem it necessary or proper to enter upon any consideration of the legality of the defendant's organization.

II.　It is claimed by the plaintiff that defendant is a life insurance company within the meaning of chapter 5, title 9 of the Code, and that it must comply with the provisions of section 1163 of that chapter.　Whether the defendant comes under the provisions of that section, is the pivotal question in this case.

Section 1161 of chapter 5, provides: "Every company formed for the purpose of insuring the lives of individuals, whether organized under the laws of the State, or of any other State or foreign country, shall, before issuing any policies on lives within this State, comply with the conditions and restrictions of this chapter."

Section 1162 provides that all the stock companies organized under the laws of this State shall have not less than one hundred thousand dollars of capital stock subscribed, twenty-five per cent of which shall be paid up and invested　*　*　and deposited with the auditor of State when he shall issue to the company a certificate, etc.

Section 1163 provides that companies organized in this State, upon the mutual plan, shall, before issuing policies, have actual applications on at least two hundred and fifty individual lives for an average amount of one thousand dollars each, a list of which shall be filed with the auditor of State, and a deposit made with said auditor of an amount equal to three-fifths of the whole annual premiums on said applications, etc., when the auditor shall issue a certificate.

Section 1160, which is found in chapter 4 of this title of

the Code, is as follows: "Nothing in this chapter shall be so construed as to prevent any number of persons from making mutual pledges and giving valid obligations to each other for their own insurance from loss by fire or death, but such association of persons shall in no case insure any property not owned by one of their own number, and no life except that of their own members, nor shall the provisions of this chapter be applicable to such associations or companies.     *     .*. And such companies organized under this section shall pay the same fees for annual reports as are now paid by stock companies, but such association or companies shall receive no premiums nor make any dividends; but the word premiums herein shall not be construed to mean policy and survey fees nor the necessary expenses of such companies."

It would seem from an examination of the articles of incorporation and by-laws of the defendant, that it falls under the provisions of this section. The object of the defendant as declared in its articles of incorporation and by-laws is to afford financial aid and benefit to the families and benficiaries of deceased members, and assistance to the members personally in case of sickness or disability. The payment of membership fees, annual dues and assessments is required, but these are to be used in paying the actual expenses of the association, and the benefits on account of death or sickness. Even the permanent fund contemplated in article fifteen of the by-laws, from unused admission-fees, dues and assessments, must be used to pay the necessary expenses and benefits without assessment. The by-laws evidently contemplate that when there is enough permanent fund accumulated to pay a benefit, then no assessment shall be made. There is no possible way, without a violation of the articles of incorporation, that any fund can accumulate for peculation or division.

It is claimed, however, by the appellant, that section 1160 occurs in chapter 4, and that it affords immunity only from the provisions of that chapter, and that section 1161 is found in chapter 5, and applies to every company formed for the

purpose of insuring lives, and hence the defendant must comply with the provisions of chapter 5. Chapter 5 enumerates only two classes of companies, joint-stock companies and mutual companies. It provides what each must do, before it is authorized to engage in business. Section 1160 authorizes a company which does not fall under either designation. Now it could not have been the intention of the legislature, after authorizing such company in section 1160, to impose such restrictions in sections 1161, 1162, and 1163, as would render the organization impossible.

Sections 1161 to 1163 must not be so construed as to repeal section 1160. They are in *pari materia*, and must be construed together, and must, if possible, be given force and effect. In order to do this, the word *every* must be limited to the stock and mutual companies referred to in the following sections. To construe it as applying to the companies authorized in sestion 1160, would prefer shadow to substance, and illustrate the maxim *qui hæret in litera, hæret in cortice.*

III. It seems to be insisted, however, that even section 1160 of the Code does not exonerate the defendant from making annual report and paying the requisite fee thereon. This company was not organized until April, 1881. It was not required to make annual statement until January 1, 1882. Code, § § 1141 and 1167. This action was commenced on the 17th day of August, 1881, and was determined in the court below in September, 1881. It follows that the defendant could not have been in default in this respect when the action was commenced. The demurrer was properly sustained.

AFFIRMED.