URSULA PRADER v. THE NATIONAL MASONIC ACCIDENT ASSOCIATION, Appellant.

**Insurance Company Defined:** BRINGING OF ACTION AGAINST. An association which operated upon the assessment plan in paying benefits, and designated its business as insurance, is an assurance company within the meaning of Code, section 2584, providing that an assurance company may be sued in the county where the contract was made or where the loss occurred.

**Policy Construed:** MAXIMUM RECOVERY. Where an accident policy limits the insurance to a certain amount, an allowance made to the injured, after the accident, should be deducted therefrom.

**Life Insurance:** EVIDENCE OF INTOXICATION. Evidence that deceased was sober when he left home with two others; that each drank from a quart bottle of whisky, of which some was left when they returned; that deceased then drank two glasses of wine; and that he was then injured by stepping into a hole,—does not show that deceased was injured while under the influence of intoxicating

| 95 | 149 |
|----|-----|
| 95 | 359 |
| 95 | 149 |
| 97 | 323 |
| 95 | 149 |
| 103 | 605 |
| s107 | 433 |
| 95 | 149 |
| 110 | 483 |
| 110 | 604 |
| 95 | 149 |
| 112 | 235 |
| 95 | 149 |
| 124 | 626 |
| 95 | 149 |
| 139 | 139 |
| 141 | 77 |

. drink, it appearing that he was considered sober by those in company with him.

SAME: CAUSE OF DEATH. Evidence that deceased broke his limb; that it turned black; that the discoloration extended to the body; and that he was in great pain,—is sufficient to sustain a finding that the injury was the proximate cause of the death, though there was evidence that deceased was at times intemperate.

DEATH WHILE "VIOLATING LAW:" CONSTRUED. A provision in an accident insurance policy, that it shall not cover an accident occurring while the insured was violating law, does not apply where the insured was injured on Sunday, while at a friend's, after hunting, though hunting on Sunday is prohibited by Code, section 4072.

Privileged Communication: PHYSICIAN. Code, section 3643, providing that a physician shall not give in evidence any confidential communication properly intrusted to him in his professional capacity, extends to the knowledge acquired by personal examination of the patient, and the communication of an associate physician.

Arbitration: PUBLIC POLICY. Provisions in the articles of incorporation of an insurance company, and in its certificate that all disputed claims shall be arbitrated before suit, and that the award shall be final and conclusive, will not be enforced. 54 N. W. Rep., 184, followed.

Harmless Error: PARTIES TO DECREE. The fact that the officers of defendant mutual accident association, who are not parties to the action, were ordered to collect and pay an assessment adjudged due from defendant to plaintiff, is not ground for complaint by defendant, as this provision added nothing to the effect of the decree against it.

GRANGER, J., took no part.

*Appeal from Jones District Court.*—HON. J. H. PRESTON, Judge.

TUESDAY, MAY 28, 1895.

Action in equity to recover on a certificate of membership, and to compel the levying and collection of an assessment for the payment of the amount claimed to be due. There was a hearing on the merits, and a decree for the plaintiff. The defendant appeals.— *Modified.*

*Varnum & Anderson* and *Clark Varnum* for appellant.

*J. W. Doxsee* and *Jamison & Burr* for appellee.

Robinson, J.—The defendant is a corporation duly organized under the laws of this state.   In December, 1889, it issued to Christian M. Prader a certificate of membership, by which the defendant agreed to pay twenty-five dollars each week, for a period not exceeding fifty-two consecutive weeks, as indemnity for loss of time resulting from bodily injury inflicted during the life of the certificate, through external, violent, and accidental means, which should, independently of all other causes, immediately, wholly, and continuously disable him from transacting his business.   The certificate further required the defendant to pay to the wife and child of Christian M. Prader, in case he should die from the effects of the injuries against which the certificate provided, within ninety days of the time of receiving them, the sum of five thousand dollars.   But the agreements stated were on the condition that the defendant should not be liable for a greater sum than should be realized from one assessment of two dollars made upon and collected from all its members assessable on the date on which the injury should be received. On the thirtieth day of October, 1892, Prader met with an accident by which one of his legs was broken, and which, it is claimed, caused his death on the eighth day of the next month.   This action is brought by his widow, in her own right and as guardian of her minor child, Rudolph Prader, to recover indemnity for the loss of time of the decedent, and five thousand dollars for his death, and to compel the defendant to levy and collect an assessment to pay the amount claimed to be due. The district court adjudged that the plaintiff was entitled to recover, fixed the amount at five thousand

and twenty-five dollars, and ordered that the defendant and its officers make and collect an assessment of two dollars on each of its members, and that the proceeds of the assessment, not exceeding the amount stated, be paid to the plaintiff.

I. Before filing its answer, the defendant appeared and filed an application for a change of the place of trial to Polk county, on the ground that it was a mutual benefit association organized upon the mutual assessment or co-operative plan, for the purpose of paying benefits to its members for accidents occurring to such members, and to no other persons, by means of assessments levied on its members; that it is not an insurance company, and does not do an insurance business; that it was incorporated, and its principal place of business is in Polk county; that it has not and never has had an office or agency in Jones county, and that the original notice was served on it in Polk county. Resistance to the motion was filed, which claimed that the defendant was an insurance company, and which showed that it had an agent in Jones county, who was authorized to transact business for it. The motion was overruled, and of that ruling the defendant complains. Section 2584 of the Code is as follows: . "Insurance companies may be sued in any county in which is kept their principal place of business, in which was made the contract of insurance, or in which the loss insured against occurred." This clearly authorizes an action against an insurance company to be brought in the county in which the loss occurred, even though the principal place of business of the company is in another county of the state. *Hunt v. Insurance Co.*, 67 Iowa, 742 (24 N. W. Rep. 745); *Insurance Co. v. Granger*, 62 Iowa, 272 (10 N. W. Rep. 504). But it is said that the defendant is not an insurance company, within the meaning of the section quoted, and that as its principal place of business was in

Des Moines, it was entitled to have the case tried
in Polk county. "Insurance" is defined to be "a
contract whereby one party agrees to indemnify
another in case he shall suffer loss in respect of
a specified subject by a specified peril." See 11
Am. & Eng. Enc. Law, 280, note. The fact that the con-
tract may be subject to a condition will not affect its
character. Most contracts of insurance are founded
upon conditions. It is said that the case of *State v.
Iowa Mut. Aid Ass'n,* 59 Iowa, 125 (12 N.W. Rep. 782), and
chapter 65 of the acts of the Twenty-first General
Assembly, authorize the conclusion that mutual benefit
associations are something other than and different
from insurance companies. The case and statute
referred to show that such associations are governed by
laws made especially applicable to them, and not by the
general insurance.laws of the state regulating life insur-
ance. But they do not show that the associations are
not insurance companies. The object of the defend-
ant, as stated in its articles of incorporation, is "to
furnish its members the advantages of accident insur-
ance." Its by-laws require that "each and every mem-
ber shall pay for his insurance in equal amounts."
The application for membership, signed by Prader,
stated the "insurance, in case of accidental death, to be
$5,000." The certificate on which this action is founded
refers to Prader as "the assured," and "the insured,"
and provides that the "insurance does not cover" cer-
tain specified cases. It is quite clear that the theory
that the defendant is not engaged in doing an insur-
ance business was not entertained when the contract
in question was made, and it has no support in the
statutes of this state. We conclude that the defend-
ant is an insurance company, within the meaning of
section 2584 of the Code, and that the motion for the
removal of the cause to Polk county was properly over-

ruled.   See *Matt v. Association*, 81 Iowa, 135 (46 N. W. Rep. 857).

II.   The application of Prader for membership in the defendant contains the following: "I agree that this certificate shall not cover any injury happening through or while under the influence of intoxicating drinks or narcotics." A provision of the certificate issued is as follows: "This insurance does not cover * * * accident, nor death or disability, resulting wholly or in part, directly or indirectly, from any of the following causes, or while so engaged or affected: * * * Intoxication or narcotics." The appellant contends that Prader was under the influence of intoxicating liquor when the accident in question happened; that his death was due to the excessive use of such liquor; and that, therefore, it is not liable on account of his death.   The evidence discloses the following facts:   The deceased was a hardware merchant engaged in business in Monticello.   In the morning of October 30, 1892, he left the town with his son Rudolph, then about eighteen years of age, and a companion named Smith. The party were in a one-horse delivery wagon, and had with them three guns, ammunition, a quart bottle of whisky, and food for a luncheon.   The reason given by Prader for making the trip was that he wished to purchase some wood.   After driving a few miles, he spoke to a man about wood.   After that the party drove about two miles further, and stopped in the woods, seven or eight miles northeast of Monticello, for the purpose of hunting.   The testimony of Rudolph and Smith with respect to what occurred in the woods is not in all respects the same, but it appears from what they state that between 11 and 12 o'clock in the forenoon they returned to the wagon, and found Prader lying in it.   Rudolph states that his father said he had slipped into a hole, and hurt one of his legs, but Smith

says nothing in regard to such a statement. Luncheon was eaten, and Rudolph and Smith left the wagon, and continued to hunt until about 4 o'clock in the afternoon, when they again returned to the wagon, and again found Prader in it. They harnessed the horse, and drove about two and one-half miles towards Monticello, stopping at the house of a man named Brenneman. . They remained there for some time, and, as they were leaving, in walking from the house to the wagon, Prader stepped into a hole, and fell to the ground dislocating his right ankle, and fracturing the right tibia. He was assisted into the wagon, and driven home. The next day a physician was called, who set the broken bone, replaced the dislocated one, and continued to treat Prader, until the eighth day of November, when he died. The evidence in regard to the use of intoxicating liquors by the deceased on the day of the injury is substantially as follows: The plaintiff states that he "appeared to be all right when he left the house" in the morning. Rudolph states that the whisky they had was taken by himself and Smith; that his father did not drink any of it; and that some of it remained when they reached home. He also states that his father drank at least one glass of wine at Brenneman's. Smith testified that all three drank of the whisky, Prader drinking only a small quantity; that about one-third of it was gone when they started for home; that Prader drank wine at Brenneman's, but that it was his opinion that Prader was sober when the accident occurred at Brenneman's. Brenneman testified that, in the afternoon of the day of the accident, Prader, his son, and Smith, came to his house, and Prader asked him for something to drink; that he treated them to new wine made from alder berries and grapes, and weakened with water; that Prader drank of it twice, each time the contents of a small wine glass, and that he did not seem to be intoxicated. Brenneman

also testifies that he drank "a good many glasses" before Prader came that day, but that it did not affect him. Mrs. Brenneman states that the wine had just been made from grapes and alder berries; that Prader did not show that it affected him, and that it did not make him drunk. This evidence does not show that the accident in question resulted from intoxication, nor that Prader was under the influence of intoxicating drinks when it happened, and there is no other evidence in regard to his use of intoxicating liquor or its effect upon him at that time.

III. The appellant claims that the death of Prader was due to heart failure, which was the result of chronic alcoholism, and not to the accident in question. To sustain that claim, it offers the testimony of Dr. Mirick and Dr. Hunter. The knowledge of both in regard to the condition and cause of the death of Prader was acquired chiefly, if not wholly, while they were acting as his physicians. Dr. Mirick had been Prader's family physician for several years. Dr. Hunter was called to consult with Dr. Mirick a few hours before Prader's death, and his knowledge of the conditions and cause of death of Prader was derived from the history of the case as given him by Dr. Mirick and from a personal examination. The plaintiff objects to the testimony of these physicians, on the ground that their knowledge was obtained professionally, for the purpose of properly discharging their duties in the treatment of Prader, and that it is therefore privileged and incompetent. Section 3643 of the Code is as follows: "No practicing * * * physician * * * shall be allowed in giving testimony to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice. * * *

Such prohibition shall not apply to cases where the party in whose favor the same are made waives the right conferred." This statute, in its application to verbal communications made by patients to their physicians, has been considered in the following cases: *Guptill v. Verback,* 58 Iowa, 99 (12 N. W. Rep. 125); *Raymond v. Railway Co.,* 65 Iowa, 152 (21 N. W. Rep. 495); *McConnell v. City of Osage,* 80 Iowa, 298 (45 N. W. Rep. 550). As applied to such communications, its meaning is clear and settled.

But it is contended by the appellant that it has no application to knowledge acquired by physicians by a personal examination of their patients, or from any source other than statements made by them. The privilege did not exist at common law, but is created by statute, and varies in different states. The general rule is said to be that "the privilege extends to facts necessary to enable the physician to prescribe, and which are communicated to him for the purpose of enabling him to perform his professional duties. Such facts are privileged, whether learned directly from the patient himself, or acquired by the physician through his own observation or examination." 19 Am. & Eng. Enc. Law, 147. By a statute of New York, "any information" which the physician may have acquired in attending his patient in a professional character, and which was necessary to enable him to prescribe as a physician, is privileged. Under that statute, information may be privileged which is derived from the statements of the patient, from the statements of others about him, or from the observation of his appearance and symptoms. *Edington v. Insurance Co.,* 67 N. Y. 194, 77 N. Y. 568. The same rule is followed under a similar statute in Missouri. *Gartside v. Insurance Co.,* 76 Mo. 446.

Under a statute of Indiana, physicians are not competent witnesses "as to matters confided to them

in the course of their profession, * * * unless
with the consent of party making confidential com-
munication." This has been held to apply to mat-
ters learned by observation and by examination of
patients. *Association v. Beck*, 77 Ind. 203. Although
the statute of this state uses the word "communica-
tion," it means much the same as the word "informa-
tion" in the statutes of other states to which we have
referred. The prohibition of our statute refers, not
merely to verbal communications, but to those of any
kind by which information of the character of that
specified in the statute is imparted. Information of
the actual condition of a patient may be much more
readily communicated to or acquired by a physician
through a personal examination than by statements
of the patient. In many cases exact knowledge can
only be obtained by means of such examination, and it
is clear that it is as much to the interest of the patient
to have the information so obtained treated as confi-
dential as it would be had he known and communicated
it verbally. We conclude that the prohibition
of section 3643 is not confined to verbal com-
munications, but that it extends to facts which
are learned by a physician in the discharge of his
duties, from his own observation and examination of
the patient. If the facts thus learned are of a confi-
dential character, and are necessary and proper to
enable the physician to discharge his professional
duty to his client, they are protected. So far as the
testimony given by Dr. Mirick is of that character, it
cannot be considered by us, and the same is true of the
testimony of Dr. Hunter. The information he received
from his associate was necessary to enable him to dis-
charge his duty properly, and cannot be used for any
other purpose. It is protected by the statute. When
the incompetent testimony is rejected, no evidence
remains to sustain the claim that the death of Prader

was caused by chronic alcoholism.  Several witnesses who saw him during his last sickness testified, in substance, that he was not suffering from any disease or trouble excepting the injuries caused by the accident and their effects.  He was in great pain, and the injured limb turned black, the discoloration finally extending to his body.  It is true, death rarely results from no other cause than a broken limb, and it is quite possible that Prader was in a diseased condition at the time of the accident, and that his death was due in part to that condition.  One witness (Dr. Mirick) testifies that there were times during the last year and a half preceding his death when Prader was intemperate, but that was not sufficient to show that his death was caused by intemperance.  The evidence justifies the conclusion that the proximate cause of death was the accident and the resulting injury to his limb, and, in the absence of proof to the contrary, is sufficient to show a right of recovery.  *Sutherland v. Insurance Co.*, 87 Iowa, 506 (54 N. W. Rep. 453).

IV.  The certificate in suit provides that it shall not cover "accident nor death or disability resulting wholly or in part, directly or indirectly, from any of the following causes, or while so engaged or affected: * * * Violating law."  The accident in question happened on Sunday, and the appellant contends that it is not liable by reason of the provision quoted.  Section 4072 of the Code provides that "if any person be found on the first day of the week, commonly called Sabbath, engaged in * * * hunting, shooting, carrying firearms, * * * every person so offending shall, on conviction, be fined in a sum not more than five dollars nor less than one dollar."  A sufficient answer to the claim of the appellant made under this statute is that Prader is not shown to have been engaged in doing any of the prohibited acts at the time of the accident.

There is some testimony in regard to a mishap in the woods, but, if any injury was sustained then, it was not serious. The accident which caused the death of Prader happened at Brenneman's some hours after he had stopped hunting, and several miles from the place where he had been engaged in that occupation. The case of *Duran v. Insurance Co.*, 63 Vt. 437, 22 Atl. Rep. 530, relied upon by the appellant, is not in point. The statute of the state of Vermont, which was construed in that case, prohibited traveling as well as hunting on Sunday. The accident there in question happened while the assured was engaged in hunting or in traveling, and, as both were prohibited, the accident appears to have resulted from an illegal act. It may be that if Prader had not gone to the woods to hunt he would not have been at Brenneman's, and therefore would not have stepped into the hole; consequently would not have injured his leg on the day in question; but that does not show that the injury was caused by his violation of the law. That was too remote to be regarded as a cause of the accident.

V. The articles of incorporation of the defendant contain the following:

"Art. 11. Disputed claims shall be adjusted as follows: Should such a claim arise, it shall be referred to a committee of three, all of whom shall be master masons,—one to be chosen by the assured or his representative, one by the association, and the two so chosen shall select the third,—none of whom shall be relatives of the assured, or have any pecuniary interest in the claim. No suit shall be brought upon any disputed claim before the same shall have been arbitrated by such committee, and the award of said committee shall be final and conclusive upon the claimant and the association."

The provisions are also contained in the certificates. None of the matters in controversy have been

submitted to arbitration, and the defendant pleads the provisions we have quoted, and the fact that no arbitration has been had as a defense.   The appellee contends that the provision to arbitrate is not a bar to this action.   As a general rule, the parties to an agreement may stipulate for the determination of specified questions which may arise between them by a third person or by arbitrators.   Thus, a provision that the amount of money which shall be paid for materials to be furnished or services to be performed, or the time of payment, shall be determined in a specified manner, or by a person or body named, is valid, and will be enforced. *Ross v. McArthur*, 85 Iowa, 204 (52 N. W. Rep. 125); *Hamilton v. Insurance Co.*, 136 U. S. 242, 10 Sup. Ct. Rep. 945; *U. S. v. Robeson*, 9 Pet. 319; *Haley v. Bellamy*, 137 Mass. 357; *Hudson v. McCartney*, 33 Wis. 332; *Delaware & H. Canal Co. v. Pennsylvania Coal Co.*, 50 N. Y. 250; *Old Saucelito Land, etc., Co. v. Commercial Union Assurance Co.*, 5 Pac. Rep. (Cal.) 232; *Insurance Co. v. Lewis*, 10 So. Rep. (Fla.) 297; *Gasser r. Fire Office*, 42 Minn. 315, 44 N. W. Rep. 252.   Many other authorities might be cited to the same effect.   It is equally well settled that a general provision by which the parties to an agreement in terms bind themselves to submit to arbitration all matters of dispute which may thereafter arise, and making the arbitration final, will not deprive the courts of their appropriate jurisdiction, nor be enforced by them.   *Delaware & H. Canal Co. v. Pennsylvania Coal Co., supra; Seward v. City of Rochester*, 109 N. Y. 165, 16 N. E. Rep. 348; *Insurance Co. v. Lewis, supra; Reed v. Insurance Co.*, 138 Mass. 572; *Holmes v. Richet*, 56 Cal. 307; *Old Saucelito Land, etc., Co., v. Commercial Union Assur. Co., supra; Stephenson v. Insurance Co.*, 54 Me. 55; *Mentz v. Insurance Co.*, 79 Pa. St. 478; *Trott v. Insurance Co.*, 1 Cliff. 439, Fed. Cas. No. 14,189; *Kinney v. Association*, 14 S. E. Rep. (W. Va.) 297; 2 May, Ins., section 492; 2 Chit. Cont.

1183; 2 Pars. Cont. 707; Morse, Arb. 91; 2 Story, Eq. Jur., section 1457; 11 Am. & Eng. Enc. Law, 353. The provisions under consideration are general in their terms, and apply to "all disputed claims," whatever their character may be. They contemplate awards which shall be final and conclusive, and the questions involved in them may be of law as well as of fact. They provide for the settlement of all disputed claims by the arbitrators to the exclusion of the courts, and are to that extent contrary to the rule of law we have stated, and will not be enforced. These provisions were considered in *Whitney v. Association* (Minn.) 54 N. W. Rep. 184, and held not to bar an action where an arbitration had not been made. The case involves precisely the question here decided, and fully supports our conclusion. The fact that the provisions in question are found in the articles of incorporation as well as in the certificate is not material. The articles were adopted under the general laws of this state relating to the organization of such corporations, and cannot be enforced so far as they are contrary to law.

VI. The certificate provides that sums paid on account of disability resulting from an accident shall be deducted from the principal sum to be paid in case of death of the assured. The plaintiff was not entitled to more than five thousand dollars, and the allowance in excess of that sum was therefore unauthorized.

VII. The decree of the district court provides that an assessment of two dollars be made upon each member of the association assessable at the time of the accident, and also contains the following: "And defendant's officers are ordered and directed to collect and pay to the plaintiff such proceeds of such assessment, not exceeding said sum of $5,000." There is a similar provision in regard to the assessment and collection of an indemnity of twenty-five dollars. The

appellant complains of so much of these provisions as refer to its officers.    They are not parties to the action, and are not complaining of the decree.

It is not apparent that the appellant will suffer prejudice from the portions of which it complains, since it can only act through its officers and employes, and the effect of the decree is merely to direct the manner in which the amount found to be due the plaintiff shall be raised.    The provisions in question really add nothing to the force and effect of the decree, since the officers of the defendant are not in court.    The defendant would have been compelled to require them to do what the decree directs as to the five thousand dollars.

VIII.    Questions which we have not specially noticed are presented in argument, but they are unimportant, or are disposed of by what we have said.    The amount of the recovery will be reduced by the sum of twenty-five dollars, and as thus modified the decree of the district court is affirmed.—*Modified and affirmed.*

Granger, J., took no part in this case.